## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Terrance J. Thiel,

    Plaintiff,

vs.

Eniva Corporation,

    Defendant.

Court File No. _____

**COMPLAINT**
JURY TRIAL DEMANDED

---

Plaintiff by his attorneys, Nichols Kaster & Anderson, brings this action for damages and other legal and equitable relief for Defendant's violations of laws prohibiting discrimination in employment and other matters. Plaintiff states the following as his claims against Defendant:

### JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1964 and Title 42 U.S.C. §2000e et. seq. Therefore, this court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 28 U.S.C. § 1331. The court also has supplemental jurisdiction to adjudicate Plaintiff's claims under the Minnesota Human Rights Act, Minn. Stat. §363A.01 et. seq.

2. The unlawful practices described herein have been committed in the District of Minnesota, the employment records relevant to these practices are, on

1

information and belief, maintained and administered at the offices of the Defendant in the District of Minnesota.

## PARTIES

3.  Plaintiff Terrance J. Thiel is an individual residing at 3713 33rd Avenue NE, City of Minneapolis, County of Hennepin, State of Minnesota.

4.  Defendant Eniva Corporation is a Minnesota corporation with a business address of 9702 Ulysses Street NE, City of Minneapolis, County of Hennepin, State of Minnesota.

## FACTUAL ALLEGATIONS

5.  Plaintiff began his employment with Defendant in the Quality Assurance Department as a Quality Assurance – Analytical Lead Chemist on or about August 2, 2006.

6.  From nearly the outset of Plaintiff's hire, Florina Nita, Plaintiff's direct supervisor, displayed inappropriate and unwelcoming conduct toward Plaintiff, including but not limited to, touching Plaintiff on his knee, leg, shoulder and wrist despite being repeatedly told by Plaintiff that such conduct was inappropriate and made him feel uncomfortable; winking at Plaintiff; and making strong sexual innuendo toward Plaintiff through verbal and nonverbal behavior.

7.  In August 2007, Plaintiff had a one-on-one meeting with Ms. Nita where Ms. Nita closed the door and rather than sitting in a chair to converse, sat on a table wearing a very revealing skirt. Throughout the meeting, Ms. Nita repeated the same questions of Plaintiff regardless of his responses, and gradually inched closer to Plaintiff.

Plaintiff advised Ms. Nita that such conduct made him feel uncomfortable and left the room. Ms. Nita yelled at Plaintiff later in the week for being "difficult."

8. On information and belief, several weeks following the incident described in paragraph 7 above, Ms. Nita accused Plaintiff of "going over her head" on a work-related issue and indicated that Plaintiff better keep her happy because she was the only person that could keep Plaintiff's job "secure."

9. Throughout the fall of 2007, and because Plaintiff refused to partake in the inappropriate conduct advanced by Ms. Nita, she often told Plaintiff's co-workers that Plaintiff had a bad attitude and was a difficult person with whom to work.

10. During Plaintiff's employment with Defendant, he did not receive a warning or formal or informal reprimand from Defendant because of his attitude or job performance.

11. In October 2007, several employees of Defendant, including Plaintiff and Ms. Nita, attended a work conference in California. Shortly before the trip, Ms. Nita said to Plaintiff that she needed to get Plaintiff drunk while in California so that he can "open up." She winked at Plaintiff following such comment.

12. During dinner one evening while in California for the work conference, Ms. Nita said to Plaintiff that sometimes she doesn't understand Plaintiff and that she needed to give Plaintiff a spanking.

13. In one-on-one meetings following the California trip, Ms. Nita told Plaintiff that he had a bad attitude and sometimes acted "like a little shit." In one meeting, in the fall of 2007, Ms. Nita yelled at Plaintiff for an excessive period of time because she

believed he had improper telephone etiquette. In another meeting in the fall of 2007, Ms. Nita said to Plaintiff that he would know how to manage people better if he had a family and children.

14. On November 9, 2007, Plaintiff submitted a verbal complaint to Defendant's Human Resources Department regarding Ms. Nita's conduct. Ramona Morgan, Defendant's Human Resource Manager, took notes and indicated that she would speak with Defendant's Senior Vice President, Scott Bocklund.

15. On November 29, 2007, Ms. Morgan read aloud to Plaintiff a summary (on information and belief that she drafted) based on Plaintiff's November 9, 2007 complaint. Ms. Morgan made further inquiries regarding the substance of Plaintiff's complaint, including names of other employees that may have knowledge or information regarding Plaintiff's complaint. Ms. Morgan said a formal complaint would be prepared and that Plaintiff would receive a copy of such complaint. Ms. Morgan concluded the conversation by indicating that she needed to speak with Mr. Bocklund again as well as Ms. Nita.

16. On December 6, 2007 Plaintiff, along with several co-workers who were identified by Plaintiff to Ms. Morgan on November 29, 2007, was terminated by Defendant. Defendant's stated reason on December 6, 2007 for termination of Plaintiff was improper use of company email and use of Defendant's name for personal gain.

17. On December 17, 2007, Plaintiff received a letter from Defendant stating the reasons for termination of employment. Defendant advised that Plaintiff's

termination was because Plaintiff violated the company's Non-Disclosure Agreement and Employee Handbook policies.

18.     Despite being told otherwise, Plaintiff never received a copy of the formal complaint from Defendant.  Plaintiff was never informed of the results of the alleged investigation stemming from his complaint about Ms. Nita's conduct.

## COUNT I

### REPRISAL DISCRIMINATION IN VIOLATION OF TITLE VII

19.     By reference hereto, Plaintiff hereby incorporates paragraphs 1 through 18 of his Complaint.

20.     42 U.S.C. § 2000e-3 provides in part that it is an unlawful employment practice for an employer "to discriminate against any individual … because he has opposed any practice made an unlawful employment practice by this title…"

21.     Defendant's conduct towards Plaintiff was retaliation in violation of 42 U.S.C. § 2000e-3.

22.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress, humiliation, embarrassment and other damages in excess of $75,000.

23.     Defendant committed the above-alleged acts with malice, reckless disregard, or deliberate disregard for the rights and safety of Plaintiff.

## COUNT II

### REPRISAL DISCRIMINATION IN VIOLATION OF
### THE MINNESOTA HUMAN RIGHTS ACT

24. By reference hereto, Plaintiff hereby incorporates paragraphs 1 through 23 of his Complaint.

25. Minn. Stat. § 363A.15 provides in part that "it is an unfair discriminatory practice for any ... employer ... to intentionally engage in any reprisal against any person because that person: (1) Opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this chapter ... A reprisal includes, but is not limited to, any form of intimidation, retaliation, or harassment."

26. Defendant engaged in reprisal against Plaintiff.

27. As a direct result of Defendant's conduct in violation of Minn. Stat. § 363A.15, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation and other damages in excess of $75,000.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. That the practices of Defendant complained herein be determined and adjudged to constitute reprisal discrimination in direct violation of Title VII, 42 U.S.C. § 2000e and Minn. Stat. § 363A.15;

2. That Plaintiff be awarded all relief available under Title VII, 42 U.S.C. § 2000e and the Minnesota Human Rights Act, Minn. Stat. § 363A.01 et seq., including an amount equal to three times his lost salary and fringe benefits

pursuant to Minn. Stat. § 363A.29 each in amounts to be determined at trial, with interest on such amounts;

3. For an award of punitive damages in an amount to be determined at trial;

4. For compensatory damages for mental anguish and emotional distress in an amount in excess of $75,000;

5. For an award to Plaintiff of his attorney's fees and the costs of this action, pursuant to Title VII, 42 U.S.C. § 2000e and Minn. Stat. § 363A.33(7);

6. For a civil penalty against Defendant pursuant to Minn. Stat. § 363A.29; and,

7. For such other and further relief as the Court deems just.

Date: January 25, 2008    NICHOLS KASTER & ANDERSON, PLLP

_____
Steven Andrew Smith #260836
Matthew H. Morgan #304657
80 South Eighth Street
4600 IDS Center
Minneapolis, MN 55402-2242
Telephone: (612) 256-3200

ATTORNEYS FOR PLAINTIFF